UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

E. R. N. XXX-XX-9797                          CIVIL ACTION NO. 21-cv-429

VERSUS                                         JUDGE ELIZABETH E. FOOTE

COMMISSIONER OF SOCIAL SECURITY   MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

E.R.N. ("Plaintiff") was born in 1977. She has a high school diploma and work experience as an engine painter, waitress, construction laborer, and pipe fitter helper. She stopped working in 2011. She filed an application for Title II disability benefits and alleged an onset date of November 1, 2011 based on a bulging disc, degenerative joint and disc disease, L1 compound fracture, thickened heart muscle, kidney disease, bipolar disorder, asthma, arthritis and neuropathy sciatica. Plaintiff's last insured date for Title II was December 31, 2016, so she had to establish disability on or before that date.

Plaintiff's application was denied, and she requested a hearing before an administrative law judge (ALJ"). ALJ Devona Able held a hearing, after which she issued a decision that denied Plaintiff's application. The Appeals Council vacated that decision and remanded for a new hearing that included application of a special technique for evaluating mental impairments. ALJ Carol Lynn Lathan held a new hearing and issued a written decision that again denied Plaintiff's application. The Appeals Council denied a

request for review, which made the ALJ's decision the Commissioner's final agency decision.

Plaintiff, represented by counsel, then filed this civil action to seek the limited judicial review that is allowed by 42 U.S.C. § 405(g). Plaintiff alleges that the ALJ did not properly evaluate the supportability and consistency factors when she weighed the opinion of Plaintiff's treating physician, Dr. Michael Dole. For the reasons that follow, it is recommended that the Commissioner's decision be reversed.

**Relevant Evidence**

**A. Hearing Testimony**

Plaintiff was represented at her hearing by non-attorney representative John Yent. Yent stated at the hearing that Plaintiff suffered from back pain, degenerative disc disease, bipolar disorder, asthma, and allergies. He stated that she has problems with her memory and concentration, and her ability to stay on-task has deteriorated. He argued that the combination of impairments precluded working full-time. Tr. 34-35.

Plaintiff testified that she has trouble with her lower back and tailbone when she sits too long or stands too long. She also has issues with both of her shoulders and a pinched nerve in her neck. She testified that these issues would keep her from working a light job. Tr. 43. She received lower back injections from Dr. Stehr, but they only helped for a period of two weeks. Tr. 43-44. Plaintiff testified that, among other medications, she takes Percocet six times per day for her pain. Tr. 47

Plaintiff testified that she is able to sit for only 20 to 30 minutes at a time before she starts hurting. She can be on her feet for 20 to 30 minutes, but she cannot stand still. Tr.

52. She testified that a normal day for her includes eating breakfast, doing a daily devotional, then alternating between sitting in her recliner and walking around the house. She can prepare quick meals twice per week. She cannot clean or do laundry; her husband does those tasks. Tr. 53-54. When asked if she ever "used a cane or anything to help you get around," she answered, "No, ma'am." Tr. 54. Plaintiff's husband testified at the hearing. He testified that he has to do most of the laundry and cleaning due to Plaintiff's back pain. Tr. 62-64.

Vocational Expert ("VE") Beverly Majors testified at the hearing. The ALJ asked whether an individual of Plaintiff's age, education, and RFC could perform any of Plaintiff's past work. Ms. Majors said that she could not, but she would be able to work as a janitor, dining room attendant, or silver wrapper at the light level. If the individual were limited to sedentary work, she could be a callout operator, telephone information clerk, or escort driver. If the individual could lift and carry less than five pounds, could sit no more than one hour in a workday, and could stand and walk no more than one hour in a workday, there would be no jobs that individual could perform.

### B. Dr. Michael Dole

Dr. Dole is Plaintiff's treating pain management physician. Plaintiff was referred to Dr. Dole for treatment of neck and back pain. Tr. 555. Dr. Dole ordered electromyography testing of Plaintiff in February 2015. The test showed no electromyographic evidence of radiculopathy, brachial plexopathy, myopathy, peripheral neuropathy, or ulnar neuropathy in either of Plaintiff's upper extremities. Tr. 571.

Dr. Dole noted that Plaintiff told him that she had an MRI "several years ago" that showed a pinched nerve in her back. Tr. 568. (This is the "remote" MRI referenced in the ALJ's decision, discussed below.) Dr. Dole then ordered a repeat MRI of Plaintiff's lumbar spine. Tr. 564. The MRI, performed on October 21, 2015, showed "significant disc protrusion, L3-4." Tr. 563. (This MRI was not acknowledged by ALJ.) Dr. Dole increased a Percocet prescription and referred Plaintiff to Dr. Stehr for lumbar injections. Tr. 563.

Dr. Dole submitted a medical source statement, dated March 2017, on a form that asked the physician to rate a patient's capabilities to perform physical activities on a sustained basis of eight hours per day, five days per week. Dr. Dole noted Plaintiff's neck and lower back pain with spondylosis and osteoarthritis of the right shoulder. He stated that she had decreased range of motion in the back and neck with tenderness and antalgic gait requiring Plaintiff to use a cane. Tr. 679. Dr. Dole opined that Plaintiff must lie down for more than two hours between 8:00 a.m. and 5:00 p.m. due to pain and fatigue. He indicated that she could sit for a maximum of 30 minutes before she must stand up or lie down, and the total time Plaintiff would be able to sit during the workday is one hour. She could stand in place without walking for 15 minutes, she could walk continuously for 15 minutes. The total time she could stand or walk during a workday was one hour. Dole indicated that Plaintiff required the full-time use of a hand-held assistive device, such as a cane, for any walking. He noted that she was restricted to lifting and carrying less than five pounds, and she was unable to reach forward with her arms to push, pull, and lift objects of more than one or two pounds. She was unable to hold her head in a forward

(downward) angle for prolonged periods or to rotate her head from side to side. Dr. Dole indicated that Plaintiff would be unable to attend work for at least three complete days each month due to her medical symptoms. Tr. 679-80.

### C. State Agency Consultant

Dr. Emily Eisenhauer reviewed Plaintiff's medical records and issued an opinion in June 2017 regarding Plaintiff's disability status. It appears that she did not have access to Dr. Dole's medical source statement at the time she prepared her report. Dr. Eisenhauer noted the negative EMG and the earlier MRI that was reported to show a pinched nerve in Plaintiff's back, but she wrote that there was no imaging to document degenerative disc disease or fracture of the L-1. Tr. 128-29. She concluded that there were inadequate physical/functional exams to formulate an RFC rating. She opined that Plaintiff was not disabled because the evidence in the file was not sufficient to fully evaluate Plaintiff's claim.

**The Five-Step Evaluation Process**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. The regulations set forth a five-step sequential analysis, on which the claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. The steps are (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents

the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

**The ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2011. At step two, she found that Plaintiff had the following severe impairments: cervical and lumbar radiculopathy, degenerative joint disease, degenerative disc disease with bulging disc at L4-5, L1 vertebral fracture, obesity, and lumbago with sciatica. She also found that Plaintiff had the following non-severe impairments: "tiny" kidney stones, "small" cyst in the left kidney, mild pulmonary hypertension, mild tricuspid insufficiency, asthma, stress incontinence, and osteoarthritis of the right shoulder and knees. At step three, the ALJ found that none of Plaintiff's severe impairments were so limiting as to meet or equal a listed impairment that would require a finding of disability without further assessment.

After step three, the ALJ must assess a claimant's residual functional capacity ("RFC"), which is the most the claimant can still do despite her limitations. Kneeland v. Berryhill, 850 F.3d 749, 754 (5th Cir. 2017). The claimant's RFC is used at steps four and five to determine if the claimant can still do her past relevant work or adjust to other jobs.

The ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the evidence in the record. The ALJ discussed the opinion of the state agency medical

consultant, Dr. Emily Eisenhauer, who opined that there was insufficient evidence to determine Plaintiff's RFC. The ALJ found the opinion was not persuasive "because evidence received after this opinion was more than sufficient" to determine Plaintiff's RFC. Tr. 20.

The ALJ considered the medical source statement of Dr. Michael Dole, Plaintiff's treating pain manager. Dr. Dole opined that Plaintiff had to lie down for more than two hours between 8:00 a.m. and 5:00 p.m. due to pain and relief. He also stated that Plaintiff required an assistive device for ambulation and could not lift or carry more than five pounds. He stated that Plaintiff would miss at least three days of work per month due to her symptoms. The ALJ did not find the opinion persuasive "as it is inconsistent with the objective evidence, specifically in light of normal electromyography testing." Tr. 20.

The ALJ also noted that, although the record "is significant for an MRI demonstrating a pinched nerve, her pain manager, in April 2015, noted that the MRI scan was remote." The ALJ stated that she "did not find that scan in the record, and other imaging fails to demonstrate spine problems." Tr. 19. But the ALJ did not mention the MRI taken on October 21, 2015, which showed "significant disc protrusion, L3-4." Tr. 563.

The ALJ found that Plaintiff had the RFC to perform sedentary work, meaning she could lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour workday, and stand and work for at least two hours in an eight-hour workday. The ability to perform sedentary work was, however, further restricted by the ability to only occasionally balance, stoop, kneel, crouch, crawl, or climb stairs and never

climb ladders, ropes, or scaffolds. Plaintiff can alternate between sitting and standing by sitting for one hour, then alternating by standing one to two minutes without being off task or leaving the workstation. Plaintiff should avoid all exposure to workplace hazards such as dangerous moving machinery and unprotected heights. Many aspects of the RFC are in serious contrast with Dr. Dole's assessments.

Plaintiff's past relevant work was medium or heavy level work, so the ALJ found at step four that Plaintiff's RFC did not permit her to perform the demands of those jobs. Step five asks whether the claimant, considering her age, education, work experience, and RFC, can perform the demands of other jobs that exist in significant numbers in the economy. The VE testified that a person with Plaintiff's RFC and other factors could perform the demands of a call-out operator, polisher, or survey system monitor. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled.

**Issues on Appeal**

The sole issue on appeal is whether the ALJ adequately articulated the supportability and consistency factors in evaluating the opinion of Plaintiff's treating source, Dr. Dole, as required by 20 C.F.R. § 404.1520c(b)(2).

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

The judiciary originally developed a treating-physician rule that instructed ALJs to defer to the medical opinions of a claimant's treating physician. The Commissioner promulgated a regulation in 1991 that adopted the treating-physician rule, and its most recent iteration is in 20 C.F.R. § 404.1527(c)(2). In 2017, the Commissioner eliminated the treating-physician rule, with the intent to eliminate confusion about the hierarchy of medical sources and focus on the persuasiveness of the content of the evidence. The change also reflected a societal shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams. Harner v. Social Security Administration, __ F.4th __, 2022 WL 2298528, *3 (11th Cir. 2022).

Plaintiff filed this claim in May 2017, so the new regulation applicable to claims filed on or after March 27, 2017 is applicable. The new regulation, 20 C.F.R. § 404.1520c, provides several factors for determining what weight to give a claimant's proffered medical opinions. The ALJ must articulate how persuasive he or she finds "all of the medical opinions" in a claimant's case record. 20 C.F.R. § 404.1520c(b). The five factors for determining the persuasiveness of a medical opinion are: supportability, consistency, relationship with the claimant, specialization, and other factors (i.e., familiarity with other

evidence in the claim or an understanding of Title II's evidentiary requirements.) Id. § 404.1520c(b), (c). Supportability and consistency are the most important factors, and the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions … ." [The ALJ] "may, but [is] not required to, explain how [he or she] considered the" remaining factors. Id. § 404.1520c(b)(2).

"The more relevant the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." Id. § 404.1520c(c)(1). "The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." Id. § 404.1520c(c)(2).

Plaintiff's complaint is that the ALJ's discussion of Dr. Dole's findings did not comply with the requirement of the new regulation that the ALJ explain how she considered the supportability and consistency factors with respect to Dole's opinion. The ALJ summarized Dr. Dole's findings, which in many respects indicate greater limitations than the RFC found by the ALJ, and then discounted the opinion with the following explanation:

> The undersigned does not find this opinion persuasive, as it is inconsistent with the objective evidence, specifically in light of normal electromyography testing. The evidence does not support the need for an assistive device for ambulation, and the undersigned sees no objective basis for Dr. Dole's conclusion that she needed to lie down during the day and miss 3 days of work each month.

Tr. 20.  Plaintiff frames her issue as challenging the lack of adequate explanation, but she also challenges the substance of the assessment based on some evidence that the ALJ did not discuss.  For example, the ALJ refers to the normal EMG, but Dr. Dole analyzed those results and they did not change his opinion of Plaintiff's condition.  Moreover, he referred Plaintiff for an MRI that showed significant disc protrusion in the lumbar area.

Plaintiff's brief cites a medical source that states an EMG is not an optimal screening test and should not curtail obtaining an MRI.  Doc. 14, p. 4, fn. 1.  The court has also located a source that indicates that, for assessing radiculopathy (pinched nerve),  a "spinal MRI is more accurate for visualizing compressed nerves when pain is the only symptom" and a cited study "argues that when cervical radiculopathy is suspected or diagnosed clinically, patients should have an imaging study regardless of EMG findings."  Bhadola and Daniello, When to Refer Patients with Pain for EMG, Practical Neurology (Sept. 2018).

The ALJ also did not discuss the evidence that Dr. Dole referred Plaintiff to Dr. Stehr, who conducted a physical examination of Plaintiff and reviewed the imaging.  Dr. Stehr's assessment was radiculopathy and other disc degeneration of the lumbar region, resulting in pain and weakness.  He then administered a series of injections.  Tr. 1085-86.  This evidence is potentially supportive of and consistent with Dr. Dole's findings.

The ALJ did offer a discussion of the consistency and supportability of Dr. Dole's opinion, but what appears to be important evidence in potential support of his findings was not addressed.  It is not appropriate for the court to address the effect of the evidence in the first instance, and the ALJ's decision "must stand or fall with the reasons set forth in the

ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). See also Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

Dr. Dole's report includes the only specific medical findings in the record regarding Plaintiff's ability to perform work-related activities. His findings are in significant contrast to those in the RFC assessed by the ALJ. The ALJ did discuss the consistency and supportability of Dr. Dole's findings, but only briefly and with the omission of any discussion of the supporting MRI results and Dr. Stehr's findings that also indicate serious lumber problems and radiculopathy. Considering these omissions and the requirements of the new regulation, the undersigned finds that the current decision is not supported by substantial evidence within the meaning of the regulations. The appropriate remedy is to reverse the Commissioner's decision and remand the case for further proceedings. The ALJ can then consider and address the more recent MRI referenced by Dr. Dole, the records from Dr. Stehr, and other relevant evidence.

Accordingly,

It is recommended that the Commissioner's decision be reversed based on sentence four of 42 U.S.C. § 405(g and that this case be remanded to the Commissioner for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of July, 2022.

Mark L. Hornsby
U.S. Magistrate Judge